**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Alex Javier Medina-Penuelas,<br><br>Defendant. | No. CR-24-00428-001-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a "motion to compel disclosure of identity of confidential source" filed by Defendant Alex Javier Medina-Penuelas ("Medina-Penuelas"). (Doc. 32.)[1] For the reasons that follow, the motion is denied.

## RELEVANT BACKGROUND

In February 2024, Medina-Penuelas and a co-defendant, Hugo Armando Higuera-Acosta ("Higuera-Acosta"), were arrested and charged with drug-related offenses. (Doc. 1.) According to the complaint, the underlying investigation began when a confidential source ("CS"), who was "working for financial benefits" and had previously "been involved [in] numerous different operations, which have led to the seizure of distribution quantities of methamphetamine, cocaine, heroin, fentanyl powder, counterfeit M30 fentanyl pills, and proceeds believed to be generated through the sale of controlled substances," advised law enforcement officials that a source of supply in Mexico was attempting to distribute 35 pounds of methamphetamine. (Doc. 1 ¶ 4.) "To facilitate the

---

[1] Medina-Penuelas's request for oral argument is denied because the issues are fully briefed and argument would not aid the decisional process.

methamphetamine transaction, the [source of supply] provided the CS with the telephone number of a local Phoenix-based drug trafficker. Shortly thereafter, the local Phoenix-based drug trafficker, later identified as [Higuera-Acosta] contacted the CS to consummate the methamphetamine transaction." (*Id.* ¶ 5.) Eventually, Higuera-Acosta "provided the CS an address along South 19th Avenue and West Buckeye Road in Phoenix, Arizona to conduct the methamphetamine transaction." (*Id.* ¶ 6.)

Law enforcement officials subsequently observed Higuera-Acosta arrive at the proposed meeting location in a red Kia Spectra being driven by Medina-Penuelas. (*Id.* ¶¶ 8-10.) Soon afterward, law enforcement officials observed Higuera-Acosta get out of the Kia Spectra "with a bag and place[] the bag on the passenger's side rear seat of the CS'[s] vehicle." (*Id.* ¶ 9.)

After making these observations, law enforcement officials conducted a traffic stop of the Kia Spectra and arrested Higuera-Acosta and Medina-Penuelas. (*Id.* ¶ 10.) During a search incident to arrest of Medina-Penuelas, law enforcement officials discovered bags containing suspected methamphetamine as well as suspected fentanyl pills. (*Id.* ¶ 13.) Law enforcement officials also found suspected methamphetamine in the bag that had been placed in the CS's car (*id.* ¶ 11) and in a bag under the front passenger seat of the Kia Spectra (*id.* ¶ 12). During post-arrest interviews, both Defendants waived their *Miranda* rights and "admitted to being in the arrest location to participate in a methamphetamine transaction." (*Id.* ¶ 15.)

On March 12, 2024, the grand jury returned an indictment that charged both Defendants with the crimes of conspiracy to distribute methamphetamine and possession of methamphetamine with intent to distribute and also charged Medina-Penuelas with the crime of possession of fentanyl with intent to distribute. (Doc. 12.)

On October 13, 2024, Medina-Penuelas filed the pending motion for disclosure of the CS's identity. (Doc. 32.)

On October 25, 2024, the government filed a response. (Doc. 38.)

On October 31, 2024, Medina-Penuelas filed a reply. (Doc. 39.)

**DISCUSSION**

I.   The Parties' Arguments

Medina-Penuelas asks the Court to "order the government to disclose the identity of the [CS] that was used in this case, along with other materials that bear upon his/her credibility." (Doc. 32 at 1.) According to Medina-Penuelas, "[t]his request is made because the CS participated in setting up the drug deal in this case," "was also present when defendant and his co-defendant were arrested," and "is therefore a material witness to the facts that gave rise to the charges against the defendant and co-defendant. Furthermore, disclosure of his/her identity is likely to be helpful to possible trial defenses." (*Id.* at 1-2.) More specifically, Medina-Penuelas contends that he "is likely to raise the defenses of lack of knowledge or involvement in a conspiracy to sell methamphetamine or Fentanyl. He will likely deny knowing that there were drugs in the gray bag transferred by the co-defendant to the CS's vehicle, and as to the 800 mg of methamphetamine found underneath the front passenger's seat where the co-defendant had been seated. Furthermore, because the CS in this case only appeared to have spoken with the co-defendant (Higuera-Acosta) prior to and during the drug transaction, it is likely that the CS did not even know Mr. Medina-Penuelas prior to this incident. Consequently, he likely won't be able to identify him as a drug dealer or as anyone otherwise involved in criminal activity, and he will likely testify that he had never spoken with Mr. Medina-Penuelas and did not conspire with him to sell narcotics. This information distances Mr. Medina-Penuelas from the alleged conspiracy, thereby increasing his odds of prevailing at trial, and it reduces his exposure to 'relevant conduct' during sentencing." (*Id.* at 8-9.) As authority for this request, Medina-Penuelas cites *Roviaro v. United States*, 353 U.S. 53 (1957), and the Fifth Amendment. (*Id.* at 2.) Medina-Penuelas also identifies various categories of information related to the CS to which he believes he is entitled, including the CS's name, date of birth, and most recent address; various categories of information related to the CS's cooperation history and truthfulness; and "[a]ll other disclosure required by *Brady* and *Giglio*." (*Id.* at 9-10.) Finally, Medina-Penuelas argues that the Court must, at a minimum, hold an *in camera*

1    hearing to obtain more information from the government about the CS. (*Id.* at 5, 11.)

2        The government opposes Medina-Penuelas's disclosure request. (Doc. 38.) The
3    government argues that "[g]iven that the CS will be a necessary witness in this trial, the
4    government intends to subpoena the CS, negating the need for the defendant to receive any
5    identifying location information. Because the government anticipates calling the CS as a
6    significant witness at trial, the government will produce to the defense the following:
7    1. The CS'[s] name (excluding location and other personally identifiable information).
8    2. Any benefits the CS received from cooperation, including payment, gifts, reduction in
9    charges, immigration benefits, etc. 3. The number of the cases in which the government
10   has used the CS to provide information. 4. Any information regarding statements of the
11   CS in the instant case. 5. Any negative information regarding the CS'[s] conduct while
12   operating in a confidential capacity for the government. 6. Any negative information
13   impacting the CS'[s] veracity, bias, or character for truthfulness." (*Id.* at 4.) The
14   government also contends it should not be required to provide some of the additional
15   categories of information identified in Medina-Penuelas's motion. For example, the
16   government opposes Medina-Penuelas's request for the CS's date of birth and current
17   address because the disclosure of such information could "place the CS'[s] life in jeopardy
18   from retaliation. Based on the numerous operations that the CS has conducted with law
19   enforcement officers, targeting many criminal organizations, disclosure of the CS'[s]
20   personally identifiable information should be tailored to protect the CS wherever possible.
21   Because the government intends to subpoena and call the CS as a witness, personally
22   identifiable information such as the CS'[s] address is not necessary in order for the
23   defendant to prepare for trial." (*Id.* at 4.) The government also opposes Medina-Penuelas's
24   request for any statement the CS has ever made to law enforcement, arguing that Medina-
25   Penuelas is only entitled to discovery of the CS's statements to law enforcement regarding
26   this case and any statements in other cases that evince untruthfulness. (*Id.* at 4-5.) The
27   government concludes: "The government intends to comply with its Constitutional and
28   statutory discovery obligations, including, but not limited to, Rule 16 and the Jencks Act.

The government intends to disclose all required information related to the CS no later than two weeks prior to the final trial date." (*Id.* at 5.)

In a brief reply, Medina-Penuelas argues that "[w]hile the Government's candor and willingness to meet [its discovery] obligations is commendable, it fails to recognize that regarding the disclosure of information relevant to a Confidential Source that it is the Court's duty, not the Government[']s, to hold an *in camera* hearing to determine the scope of the information that should be disclosed." (Doc. 39 at 2.)

II.     Analysis

Medina-Penuelas's request for relief under *Roviaro v. United States*, 353 U.S. 53 (1957), lacks merit because the government has now represented that it will call the CS as a witness at trial and disclose the CS's identity (as well as make all other disclosures related to the CS that are required by law) at least two weeks before the trial date.

"The issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness." *Banks v. Dretke*, 540 U.S. 668, 697 (2004). Thus, the government may moot a *Roviaro*-based disclosure request by committing to call the CS as a witness at trial and to meet all of its statutory and constitutional discovery obligations related to the CS. As one court recently explained:

> The Magistrate Judge concluded she was not required to conduct this analysis because the United States has said it will call the SOI and CS at trial and *Roviaro* only applies when the United States does not intend to call the confidential informant. . . . Defendant Ruiz says the Magistrate Judge was wrong to reach this conclusion because . . . the core principle from *Roviaro* that a defendant must be given information (including an informant's identity) that is necessary to the preparation of his or her defense applies even when the United States plans to call the informant. This Court agrees with the Magistrate Judge and the long list of decisions she cited in concluding Defendants' reliance on *Roviaro* is misplaced in the light of the United States's representation that it will call the CS and SOI at trial and thus will produce identifying information and related Jenks Act, Brady, and Giglio materials before trial. . . . [*Roviaro*] involved the failure to disclose the names of a confidential informant who did not testify at trial. And that was important to the Supreme Court's decision. . . . By not calling the informant

> as a witness and withholding the informant's name, the United States prevented the defendant from presenting [the informant's] testimony to the jury and, possibly, using the witness to contradict the government's witnesses. The United States essentially inoculated its case against any attack based on the informant's testimony. That is not possible here. The United States will call the SOI and CS as witnesses, ensuring Defendants will have an opportunity to cross-examine them. So the reasoning of *Roviaro* is inapplicable. This case . . . remains squarely within the well-settled rule that a criminal defendant has no absolute right to a list of the government's witnesses in advance of trial. If the United States reneges on its representation that it will call the witnesses, the Court can take appropriate action, including continuing the trial, excluding other evidence, or even granting a mistrial. But, until then, the United States is entitled to the acceptance of its representation.

*United States v. Ruiz*, 2023 WL 3562970, *3-4 (N.D. Ga. 2023) (cleaned up). Many other courts have reached the same conclusion. *See, e.g., United States v. Valdovinos-Tafolla*, 2024 WL 2992502, *2 (N.D. Ga. 2024) ("[T]he early disclosure Defendant requests is not warranted. Although *Roviaro* stands for the proposition that the Government's privilege to withhold the identity of confidential informants must yield in certain instances, *Roviaro* does not apply in this case because the Government intends to call the informant to testify at trial."); *United States v. Alfaro*, 2015 WL 1042115, *4 (W.D. Ky. 2015) ("Alfaro next asks the Court to enter an order [under *Roviaro*] requiring the Government to identify any informant who witnessed or participated in the alleged criminal activity as charged in the indictment. . . . The Government states that . . . if an informant exists, he or she will be called to testify at trial and will be identified as an informant at that time. In light of the Government's response, the motion will be DENIED as moot.") (citations omitted); *United States v. Pimentel*, 2001 WL 185086, *2-3 (E.D.N.Y. 2001) ("[D]isclosure of the confidential informant's identity is not required [under *Roviaro*] if the Government will call the informant as a witness at trial. . . . [T]he Government asserts that they expect to call the informants as witnesses at trial. Therefore, this Court finds that there is no need disclose the identity of the informants because they will be witnesses at trial.") (citations omitted); *United States v. Almodovar*, 1996 WL 700267, *8 (D. Del. 1996) ("[T]he identity

of an informant, who was a participant in the transaction, need not be released before trial if the Government indicates its intention to call the informant as a witness at trial and if the Government provides the defendant with the necessary impeachment information. As applied to the facts of this case, defendant's [*Roviaro*] motion must be denied.") (citations omitted); *United States v. Beckett*, 889 F. Supp. 152, 155 (D. Del. 1995) ("[I]n the cases cited by the defendants [including *Roviaro*] the informants were not going to be called by the government to testify nor was the government going to provide any impeachment information to defendants. Thus, defendants were precluded from examining the informants in any form, and the only other witness to the transaction was a government agent. Such is not the case at bar. The government has indicated that it will call these witnesses at trial and that it will provide the defendants with appropriate impeachment material . . . one week prior to trial. Thus, unlike in *Roviaro* . . . defendants will have an opportunity to examine the informants in open court and impeach said witnesses."); *United States v. Zuluaga*, 651 F. Supp. 746, 752 (E.D.N.Y. 1986) ("[T]he government has indicated that it will call the informant as a witness and that defendants will receive § 3500 material before trial. In these circumstances, advance identification of the informant is not warranted.").

For related reasons, the Court also disagrees with Medina-Penuelas's contention that it must hold an *in camera* hearing right now to obtain more information from the government about the CS. True, the Ninth Circuit has held that "[t]he district court, in exercising its discretion on whether to conduct an *in camera* hearing on the defendant's need for a confidential informant's identity or testimony, must hold such a hearing where the defendant has shown that the information would be 'relevant and helpful.'" *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993). But the Court construes that requirement as applicable only where, as in *Roviaro* and *Amador-Galvan* (but not here), the government is attempting to withhold the identity of a non-testifying CS. *Amador-Galvan*, 9 F.3d at 1415 ("This opinion addresses the district court's refusal to disclose the identities of *non-witness* confidential informants . . . .") (emphasis added). Because, as

noted, the government has now committed to calling the CS as a witness at trial and to making all necessary disclosures (including disclosure of the CS's identity) at least two weeks before trial, it is unnecessary to hold an *in camera* hearing at this juncture—such a hearing would simply result in the Court obtaining a preview of the information that will later be disclosed to Medina-Penuelas.

Finally, the Court wishes to clarify that to the extent Medina-Penuelas believes he is entitled, on some basis other than *Roviaro*, to any discrete categories of information related to the CS that go beyond the six categories of information the government has now committed to disclosing (Doc. 38 at 4), this ruling is without prejudice to Medina-Penuelas's ability to file a renewed motion for disclosure as to those specific categories of information.

Accordingly,

**IT IS ORDERED** that Medina-Penuelas's *Roviaro*-based motion for disclosure (Doc. 32) is **denied**.

Dated this 8th day of November, 2024.

Dominic W. Lanza
United States District Judge